UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.C., | Case No. 25-cv-10415-SVK |
| Plaintiff, | **ORDER AFFIRMING IN PART AND REVERSING IN PART COMISSIONER'S DECISION AND REMANDING CASE** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | Re: Dkts. 12, 14 |
| Defendant. | |

Plaintiff T.C. appeals the decision of Defendant, the Commissioner of Social Security, which denied her application for disability insurance benefits.  For the reasons stated below, the Court **AFFIRMS IN PART** and **REVERSES IN PART** the decision of the Commissioner, and **REMANDS** the case for further proceedings, as set forth below.

**I.      BACKGROUND**

Plaintiff first received an unfavorable determination of an application for disability benefits in March of 2018.  *See* Dkt. 8 (Administrative Record ("AR")) 27, AR 121-34.[1]  In March of 2022, Plaintiff filed a new application for Supplemental Social Security income for disability benefits, which is at issue.  *See* AR 27, 309.  Her alleged disability onset date, as amended, is March 18, 2022.  AR 27. On February 1, 2023, Plaintiff's claim was denied.  AR 181-86.  Plaintiff's claim was again denied on reconsideration on December 11, 2023.  AR 189-91.  On September July 29, 2024, after Plaintiff submitted a Disability Appeal, an Administrative Law Judge ("ALJ") held a telephonic hearing.  AR 49-78;  *see* AR 196.  On October 28, 2024, the ALJ issued an unfavorable decision finding that although Plaintiff had demonstrated changed

---

[1] The record does not reflect an appeal from this decision, and it is not the subject of this Order.

circumstances from her 2018 claim affecting the issue of disability, she was nonetheless not disabled.  AR 27-42 (the "ALJ Decision").

As relevant here, in applying the sequential evaluation process for determining disability, at step three, the ALJ evaluated the listed impairments ("Listings") proffered by Plaintiff (1.15, 3.03, severe obesity, 12.02, 12.03, 12.04 and 12.11) and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  AR 30-33.  At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "medium work" with certain physical and non-physical limitations.  AR 33-41.  Finally, at step five, considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs in the national economy existing in significant numbers that Plaintiff could work including:  cleaner II, industrial cleaner and kitchen helper.  AR 41-42.  The ALJ thus concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from March 18, 2022 through the date of the ALJ Decision.  AR 42.

On October 8, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ Decision.  AR 1-6.  On December 4, 2025, Plaintiff timely filed this action in this District seeking review of the ALJ Decision.  Dkt. 1.  The Parties have consented to magistrate judge jurisdiction.  Dkts. 6, 7.  In accordance with the Federal Rules of Civil Procedure Supplemental Rules for Social Security Actions, the Parties have presented the action for decision on the briefs.  Dkt. 12;  Dkt. 14;  *see* Fed. R. Civ. P. Supp. SS Rule 5. The Court now decides the action without oral argument.

## II.    ISSUES FOR REVIEW

1.   Did the ALJ properly address the medical opinion evidence of:

    a.   The psychological consultive examiner, Dr. Laura Catlin, Psy.D.?

    b.   The psychological consultive examiner, Dr. Natasha Choudri, Psy.D.?

2.   Did the ALJ properly address Plaintiff's subjective symptom testimony?

3.   Was the ALJ's determination that Plaintiff did not meet the requirements of any Listings supported by substantial evidence?

4.   Was the ALJ's RFC determination supported by substantial evidence?

////

United States District Court
Northern District of California

> 5. Whether the Court should affirm, remand for further proceedings or remand for immediate payment of benefits?

### III.    LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court reviews the Commissioner's decision denying benefits to "determine whether it is free from legal error and supported by substantial evidence in the record as a whole." *Precious A. J. v. Kijakazi*, No. 21-cv-00242 KS, 2022 WL 22894110, at *2 (C.D. Cal. Aug. 1, 2022) (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007);  42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  For the "substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).  Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

In cases where "a claimant's symptom testimony is discredited," the Ninth Circuit has "established a two-step analysis" that the ALJ must engage in. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*  Second, if "the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.  "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo*, 871 F.3d at 678.  At the same time, "[t]he standard isn't whether [this Court] is convinced, but instead whether the ALJ's rationale is

United States District Court
Northern District of California

3

United States District Court
Northern District of California

clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). This standard thus "requires an ALJ to show his work." *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

## IV.   DISCUSSION

### A.   Issue One:  The ALJ Properly Addressed the Medical Opinion of Dr. Catlin, but Not the Medical Opinion of Dr. Choudri

In assessing Plaintiff's psychiatric conditions and limitations, the ALJ considered the opinions of Drs. Natasha Choudri and Lauren Catlin, Psy.D., as well as two State Agency[2] consultants, Drs. Anna Franco and Phaedra Caruso-Radin, Psy.D. AR 31-32, 34-36, 38-40. The ALJ found the opinions of Dr. Choudri to be "mostly persuasive," except for "two moderate impairments identified by Dr. Choudri [that] are not fully persuasive," (AR 39); she found the opinions of Dr. Catlin unpersuasive, (AR 38-39); and she found the opinions of the State Agency consultants "minimally persuasive," (AR 40).

Current regulations require that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). An ALJ must explain "how persuasive [he or she] finds all of the medical opinions from each doctor … and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* (quoting 20 C.F.R. § 404.1520c (cleaned up)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant ... objective medical evidence." *Id.* at 792-93 (same). "Consistency means the extent to which a medical opinion is consistent ... with the evidence from other medical sources and nonmedical sources in the claim."

_____

[2] A "State Agency" is an "agency of a State which has been designated by the State to carry out the disability or blindness determination function." *See* https://secure.ssa.gov/poms.nsf/lnx/0439501020 (*last accessed* July 14, 2026).

*Id.* (same).  An ALJ must explain supportability and consistency and "may, but is not required to, explain how other factors" were considered.  *C.B. v. O'Malley*, No. 22-cv-05579-LJC, 2024 WL 1329920, at *7 (N.D. Cal. Mar. 27, 2024) (citing 20 C.F.R. § 404.1520c(b)(2)(c)).  Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Catlin (and by inconsistently using her opinions to reject the opinions of the State Agency consultants) and that the ALJ should have found Dr. Choudri's opinion persuasive in full.  Dkt. 10-17.

The Court addresses Plaintiff's contentions as to each examiner in turn.

### 1.    The ALJ Did Not Err in Rejecting Dr. Catlin's Opinion

The ALJ gave a detailed account of her reasons for discounting Dr. Catlin's opinions.  AR 38-39.  Plaintiff argues that each proffered reason is factually incorrect or legally insufficient.  *See, generally*, Dkt. 12 at 10-15.  The Commissioner disputes Plaintiff's challenges to specific reasons and argues that even if it were true that the ALJ's reasons were insufficient alone, "the cumulative result of all of the ALJ's reasons together amount to substantial evidence supporting her determination."  Dkt. 14 at 3-5.  The Court examines the specific reasons proffered by the ALJ, dividing those directed to "supportability" from those directed to "consistency."

First, as to supportability, the ALJ explained that despite checking the boxes for "marked" or "extreme" limitations in various subcategories of two broad areas of functioning (Plaintiff's ability to "interact with others" and "concentrate, persist, or maintain pace"), the evidence from Dr. Catlin's examination did not support such severe findings.  AR 38 (referencing AR 477-78).  Specifically, Dr. Catlin's administration of the Montreal Cognitive Assessment ("MoCA") showed only "a possible mild cognitive impairment."  *Id.* (referencing AR 475).  Similarly, Dr. Catlin's assessment of Plaintiff on the Beck Depression Inventory, as well as using MoCA, found only moderate depression.  *Id.* (referencing AR 474-75).  Moreover, Dr. Catlin's general assessment of Plaintiff was "normal," except for a depressed mood.  AR 473.  The ALJ did make two errors in evaluating the supportability of Dr. Catlin's opinion:  (1) there is nothing inherently wrong with Dr. Catlin's reliance on a telephonic interview, (*see* Dkt. 12 at 10 (citing psychiatric publications on this point), and (2) Dr. Catlin's consideration of self-reported symptoms was not a legitimate reason to reject her opinion, (*see Nygren v. Saul*, 854 F. App'x 874, 876 (9th Cir. 2021) ("In the

United States District Court
Northern District of California

context of mental health evaluations, a physician's reliance on self-reported symptoms is thus not a legitimate reason to reject a physician's opinion."). Notwithstanding the two errors, however, the ALJ adequately explained why she considered Dr. Catlin's opinion unsupported by her examination.

The Court's conclusion as to consistency is similar. Medical evidence identified by the ALJ is sufficient to cast doubt on Dr. Catlin's opinions. In particular, the ALJ notes that Dr. Choudri examined the Plaintiff just two months after Dr. Catlin and found less severe limitations. AR 38-39. Additionally, the ALJ explained that while Dr. Catlin estimated Plaintiff would be off task "more than 30%" of the time based on her marked or extreme limitations, Plaintiff's work history demonstrates that her housekeeping job ended after 3 months "due to a transportation barrier rather than inability to sustain attendance, concentrate, respond to demands, manage symptoms or any other alleged inabilities asserted by Dr. Catlin." AR 38-39. The Court notes that two inconsistencies identified by the ALJ are legally insignificant: (1) the ALJ cannot reject Dr. Catlin's opinion as inconsistent with the opinions of the State Agency consultants when the ALJ finds those very same opinions "minimally persuasive" in light of *Dr. Catlin*'s opinions, (*compare* AR 39 *with* AR 40); (2) Plaintiff's inconsistent jailhouse symptom reporting is not significant because claimants have "a host of reasons" for not reporting health symptoms in carceral settings, (*see Chanel A. v. O'Malley*, No. 24-cv-08215-KAW, 2026 WL 886619, at *3 (N.D. Cal. Mar. 31, 2026)). Notwithstanding these errors, however, the ALJ adequately explained why Dr. Catlin's opinion was inconsistent with the objective record evidence.

In sum, "[a]n ALJ satisfies the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *C.B. v. O'Malley*, No. 22-cv-05579-LJC, 2024 WL 1329920, at *7 (N.D. Cal. Mar. 27, 2024). With regard to the supportability and consistency of Dr. Catlin's opinion, the ALJ has done so.

////

////

////

United States District Court
Northern District of California

**2.      The ALJ's Rejection of Two Parts of Dr. Choudri's Opinion Was Not Supported by Substantial Evidence**

As to Dr. Choudri's opinion, all Parties and the ALJ agree that it is largely persuasive.  The dispute centers on the ALJ's finding that two specific "moderate" limitation findings were not persuasive:  Dr. Choudri's finding that Plaintiff had a moderate impairment in maintaining a schedule and attendance and her finding that Plaintiff had a moderate impairment in completing a workday without interruptions from psychiatric conditions.  AR 39.  The Court agrees with Plaintiff only in part.

Beginning with supportability of the first impairment—maintaining a schedule and attendance—the ALJ explained that the finding was not supported by Dr. Choudri's medical examination.  Although Dr. Choudri found "impaired calculation and attention," Dr. Choudri's examination did not show any impact on "executive functioning skills."  AR 39.  The ALJ's explanation here is flawed because, as the ALJ recognizes, "executive functioning skills" is a *set of skills*.  AR 39.  It is thus not surprising and unremarkable that there is no single line item for "executive functioning skills" on Dr. Choudri's mental status exam.  *See* AR 489.  As Plaintiff argues, one of the facets of successful "executive functioning" is "attention."  *See, e.g.*, *C.D. by & through Daily v. Stanislaus Union Sch. Dist.*, No. 22-CV-01389-SKO, 2024 WL 3470844, at *13 (E.D. Cal. July 18, 2024) (noting in the context of public school disability accommodations that "Executive functioning 'includes the ability to plan, organize, focus attention, and remember instructions.'");  *see also* Dkt. 12 at 15 (citing Psychology Today (https://www.psychologytoday.com/us/basics/executive-function) for the proposition that "[t]he 'executive functions,' as they're known, include attentional control, working memory, inhibition, and problem-solving.").  The ALJ fails to explain why Dr. Choudri's note of impaired "attention" is insufficient to support a finding of impaired executive functioning skills.  AR 39.  The ALJ does not otherwise address the supportability of Dr. Choudri's opinion in this regard.[3]  Thus, because

---

[3] The ALJ's other explanations regarding the Plaintiff's ability to driver herself to the appointment on time and the Plaintiff's attempt at housekeeping work (while missing at least 1 day of work per month) go to consistency, not supportability.

the ALJ has failed to explain why this part of Dr. Choudri's opinion is not supportable by her medical examination, the ALJ's discounting of this portion of Dr. Choudri's opinion is not supported by substantial evidence.

As to Dr. Choudri's assessment that Plaintiff had a moderate impairment in completing a workday without interruptions from psychiatric conditions, the ALJ stated that there was nothing in Dr. Choudri's examination to support this opinion. *See* AR 39. The Court agrees with the Commissioner as to supportability: Dr. Choudri does not address or examine Plaintiff's depression or anxiety, except to note her mood as "good – when asked." AR 489. As to consistency, however, the Court agrees with Plaintiff. The ALJ merely points out that "Dr. Choudri did not note any difficulty completing the clinical interview or tests due to symptom related interruptions," and does not otherwise address consistency as to this limitation. AR 39. But as Plaintiff points out, just because a claimant can complete a short interview without interruption does not mean she would be unimpaired in her "ability to sustain a normal workday or week." Dkt. 12 at 16; *see also, e.g.*, *Nichols v. Colvin*, No. 14-cv-05728-KLS, 2015 WL 4660523, at *4 (W.D. Wash. Aug. 5, 2015) ("[T]he mere fact that a claimant can remain engaged within the parameters of a psychological evaluation for a limited amount of time, does not necessarily mean he or she will be able to do so appropriately or consistently in a vocational setting for a full work day."). The ALJ does not explain where the inconsistency arises.

An ALJ must "explain how [he or she] considered the supportability and consistency factors in" rejecting medical opinions. *Woods v. Kijakazi*, 32 F.4th at 792. The ALJ's explanations here are insufficient. Her explanation as to Dr. Choudri's "maintaining a schedule and attendance" is not supported by substantial evidence as to the supportability factor, while her explanation as to Dr. Choudri's "completing a workday without interruptions" opinion is incomplete and conclusory. Thus, with regard to both of the disputed impairments, the ALJ's rejection of Dr. Choudri's opinion is not supported by substantial evidence.

Finally, the Commissioner's primary argument in opposition is that, even if Plaintiff is correct, these errors were harmless. Dkt. 14 at 5. Whether these errors were harmless, and the results of these errors, are addressed in Sections IV.C. and IV.D., below.

United States District Court
Northern District of California

**B.      Issue Two:  The ALJ Erred in Discrediting Some of Plaintiff's Subjective Symptom Testimony**

Plaintiff also argues that the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's subjective "allegations of severe pain and greater physical limitations" and her "her allegations of greater mental impairments."  *See* Dkt. 12 at 17-21;  AR 40.  The ALJ concluded that these two parts of Plaintiff's subjective symptom testimony were "inconsistent with" various parts of the record.  AR 40, third paragraph (relating to physical symptom testimony);  AR 40, fourth paragraph (relating to mental symptom testimony).[4]  Plaintiff argues, and the Commissioner does not contest, that the ALJ made no finding of malingering.  *See* Dkt. 12 at 17-18;  Dkt. 14 at 6-7.  Thus, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Trevizo*, 871 F.3d at 678.  The Court addresses the ALJ's treatment of Plaintiff's physical symptom and mental symptom testimony in turn.

**1.      The ALJ Erred in Discounting Plaintiff's Testimony as to her Congestive Heart Failure/Breathing/Asthma Symptoms but Not as to her Lower Back Pain**

As to her physical limitations, Plaintiff testified that she has lower back pain and congestive heart failure/ breathing/asthma issues that limit her ability to work physically.  AR 56-60.  The ALJ discounted this testimony for several reasons.

First, the ALJ noted that during the time of Plaintiff's disability, and as of the date of the ALJ Decision, Plaintiff "continue[d] to perform part-time housekeeping work."  AR 40.  As to this reason, the Court agrees with Plaintiff that the record does not support a finding of inconsistent testimony.  A plaintiff's attempted work is certainly a relevant consideration, but only a full day of

---

[4] As Plaintiff points out, under Social Security Ruling ("SSR") 16-3p, adjudicators may not use medical inconsistency to broadly discount a claimant's testimony, but must identify specific assertions—*i.e.*, "statements about [the claimant's] symptoms"—that are inconsistent with the evidence in the record.  *See* SSR 16-3p, 2017 WL 5180304 at *11 (S.S.A. Oct. 25, 2017). However, the Court finds the ALJ here did so, dividing her analysis into two parts and identifying, in her view, inconsistencies relating to each part.  The Court gives no weight to the ALJ's broader, boilerplate assertion that Plaintiff's symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision."  *See, e.g.*, *S. T. v. Comm'r of Soc. Sec.*, No. 24-cv-07721-SVK, 2025 WL 1924385, at *4 (N.D. Cal. July 14, 2025).

United States District Court
Northern District of California

9

work would be inconsistent with Plaintiff's symptom testimony.  Plaintiff testified that when she was able to get a housekeeping assignment, it was typically "from two hours to four or five hours, maybe, sometimes eight hours" but that "long hours" would "strain [her] back."  AR 56.  The record does not reflect, and Plaintiff did not testify to, how often she was able to work the full 8-hour shifts versus how often she was limited to 2-5 hour shifts.  *See id.*  Accordingly, at least as explained by the ALJ, Plaintiff's testimony is not inconsistent with her work history.  *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[T]he record here does not establish whether [Plaintiff] held h[er]self out as available for full-time or part-time work.  Only the former is inconsistent with his disability allegations.").

Second, the ALJ explained that Plaintiff's treatment was "infrequent and conservative."  AR 40.  As to Plaintiff's lower-back-pain testimony, the ALJ explained that Plaintiff never complained of or sought treatment for problems with her lower back.  *Id.*  Plaintiff does not challenge the ALJ's reading of the record but relies on *Nguyen v. Chater* to argue that her failure to seek treatment should carry no weight in light of her mental health disorders.  Dkt. 12 at 18-20 (citing 100 F.3d 1462, 1465 (9th Cir. 1996)).  Plaintiff overreads *Nguyen*.  *Nguyen* related to a mentally impaired claimant's failure to seek treatment;  to be sure, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Id.*  However, as the Ninth Circuit has subsequently explained, evidence of failure to seek treatment for physical back pain may or may not be relevant:  "[a] claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment."  *E.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017).  While a plaintiff may provide explanations linked to her mental impairments for why she fails to seek treatment for a physical pain, Plaintiff has failed to proffer any explanation for how her mental impairments led her to fail to seek treatment for back problems.  *See* Dkt. 12 at 17-21.  In this case, the Plaintiff's failure to seek treatment for or have any documentation of care for her lower back is arguably inconsistent with her testimony of debilitating lower back pain.  It is clear enough to support the ALJ's discounting of Plaintiff's lower-back pain testimony.  *See Smartt*, 53 F.4th at 499 ("The standard isn't whether [this Court] is convinced, but instead whether the ALJ's

rationale is clear enough that it has the power to convince.").

Turning to the ALJ's assessment that Plaintiff's treatment was "infrequent and conservative" for her heart/breathing/asthma issues, the analysis is much simpler. Although the ALJ asserts that Plaintiff's treatment was "infrequent and conservative," she also notes that Plaintiff had "few asthma exacerbations" over the "two year claim period," was prescribed "an oxygen tank to use as needed" and on one occasion was hospitalized for intensive care during the relevant period. AR 40. The ALJ does not explain how this treatment is "infrequent," "conservative" or in any way *inconsistent* with Plaintiff's testimony as to her heart/breathing/asthma issues. *Contra* AR 58-59 (describing Plaintiff's hospitalization).

Accordingly, the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony as to her heart/breathing/asthma issues but has provided sufficient reasons for rejecting Plaintiff's lower-back pain testimony. Whether this error was harmless, and the results of this error, is addressed in Sections IV.C. and IV.D., below.

### 2.	The ALJ Did Not Err in Discounting Plaintiff's Mental Health Symptom Testimony

As to her mental limitations, Plaintiff testified that she has difficulty getting out of bed every day, "hear[s] voices" that gossip with her and suffers from anxiety and irritable outbursts. AR 60-65. Again, the ALJ discounted this testimony for several reasons. While the Court finds that the ALJ's reliance on the "generally normal" results of Plaintiff's prior mental state examinations to discount Plaintiff's testimony was insufficient, the Court nonetheless concludes that Plaintiff's work history and the manner in which she left her work does provide substantial evidence to support the ALJ's decision here.

First, the ALJ noted that Plaintiff's mental state examinations from various sources (including medical emergency rooms and while incarcerated) have been "generally normal." AR 40. However, assuming such mental state examinations are sufficient reasons to find inconsistency, as Plaintiff points out, some of the medical examinations in the record *did* find "evidence of acute psychiatric symptoms, including disorientation, mood lability, loose reasoning, flat and anxious affect, and sleep disturbance." AR 876, 878, 885-86, 894. In light of these

United States District Court
Northern District of California

11

records, the word "generally" cannot bear the weight the ALJ places on it: The ALJ cannot "cherry-pick" portions of the record showing "normal" mental state findings while ignoring other portions and label this "inconsistent" with Plaintiff's testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("Next, the ALJ rejected [Plaintiff's] testimony as inconsistent with Dr. Dees and Dr. McDuffee's examining evaluations. … [But] the ALJ improperly cherry-picked some of Dr. Dees's characterizations of Ghanim's rapport and demeanor instead of considering these factors in the context of Dr. Dees's diagnoses and observations of impairment.").

However, the ALJ further explained that Plaintiff "has been able to perform some part time housekeeping and … testified that her most significant barrier to performing this work is having transportation and cleaning supplies rather than mental inability." AR 40. Here, the Court agrees with the Commissioner. "An ALJ may also consider why a claimant left his last place of employment" in assessing the credibility of a claimant's symptom testimony. *E.g.*, *Zur v. Comm'r of Soc. Sec. Admin.*, No. 15-cv-01821-PHX (GMS), 2017 WL 490373, at *5 (D. Ariz. Feb. 7, 2017) (citing *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (permitting an ALJ to consider the fact that the claimant stated the "he left his job because he was laid off, rather than because he was injured."). Plaintiff testified that the reasons she had trouble with her housekeeping work were (1) physical limitations for shifts longer than 2-5 hours, which the Court addresses above and (2) transportation issues. *See* AR 55 ("Q. And about how long did you work for Hostwell? A. Maybe about three months. … Three to six months. Q. And what happened with hat job? A. I just, I'm – you know, my car went out on me, and so I hadn't got transportation in order to keep the job."). *Id.*

Accordingly, the ALJ did not err in considering Plaintiff's part-time work history and her reasons for leaving her work and finding them inconsistent with Plaintiff's subjective symptom testimony. *See Zur v. Comm'r of Soc. Sec. Admin.*, 2017 WL 490373, at *6 (ALJ did not err in finding Plaintiff's symptom testimony not credible where he "was fired from his last place of employment for allegedly stealing coffee" and did "not allege that he quit due to his symptoms.").

////

////

12

United States District Court
Northern District of California

### C.   Any Errors in the ALJ's Step Three Analysis Were Harmless

Plaintiff argues that, based on the errors discussed above, the ALJ erred in finding that Plaintiff's mental impairments do not meet or equal a listing.  Dkt. 12 at 21-22.  Only the mental impairment Listings, *i.e.*, Listings 12.03, 12.04, 12.06 and 12.15 are at issue in this appeal.  Dkt. 12 at 21-22.  Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive and bipolar-related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 12.15 (trauma and stressor-related disorders) "have three paragraphs, designated A, B, and C;  [a claimant's] mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C" to qualify.  *Id.*, § 12.00.A.2.  The ALJ found that neither paragraph B criteria nor paragraph C criteria were satisfied, and Plaintiff only challenges the ALJ's evaluation of paragraph B criteria.  AR 31-33;  Dkt. 12 at 21-22.

"[T]o satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning."  *See, e.g.*, *C.T.C. v. Comm'r of Soc. Sec.*, No. 25-cv-09275-SVK, 2026 WL 1684180, at *9 (N.D. Cal. June 10, 2026).  However, as discussed above, the Court found that the ALJ erred in discounting two of Dr. Choudri's assessed moderate limitations but not in discounting any of Dr. Catlin's assessed "marked" or "extreme" limitations.  *See, supra*, § IV.A.  As the Commissioner points out, these "moderate" limitations are insufficient to show Plaintiff is disabled at step three.  *See* Dkt. 14 at 5.  The Court also found that the ALJ did not err in rejecting Plaintiff's subjective symptom testimony as to her mental impairments.  *Id.* § IV.B.  Accordingly, because the ALJ's errors could have no impact on the paragraph B determination, and thus the broader Listing determination challenged by Plaintiff, these errors were harmless as to the ALJ's step three analysis.  Thus, the Court affirms the Commissioner's finding at step 3 that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.

////

////

////

////

13

United States District Court
Northern District of California

### D.      The ALJ's Errors Were Not Harmless as to Step Four

Plaintiff argues that the above errors impacted the ALJ's RFC determination.  Dkt. 12 at 23-24.  The Commissioner does not substantively address this argument, and so the Court deems it waived.  *See* Dkt. 14 at 9 (arguing only that "these assertions do not present an independent basis for remand because they merely rehash her prior, non-meritorious arguments that the ALJ should have accepted Dr. Catlin's opinion and Plaintiff's subjective symptoms.").  Accordingly, the Court agrees with Plaintiff that because the RFC assessment must be based on "all of the relevant evidence in the case record," and the ALJ failed to account for two of Dr. Choudri's opinions and Plaintiff's heart/breathing/asthma-related symptom testimony, the ALJ's RFC determination was flawed.  The Court reverses the ALJ's determination in this respect.

## V.      CONCLUSION AND SCOPE OF REMAND

For the forgoing reasons, the ALJ's Decision was erroneous in several respects, the errors were not harmless as to the RFC determination at step four.  Thus, remand is appropriate.

Plaintiff argues, moreover, that the Court should remand for an award of benefits rather than further proceedings under the "credit-as-true" rule.  Dkt. 12 at 24-25 (citing *Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014)).  Under that rule, a court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1174, 1178 (9th Cir.2000)).  The Court disagrees that the *Harman* elements are met here – specifically, it is not clear that the ALJ would be required to find Plaintiff disabled because it is not clear how Plaintiff's testimony and Dr. Choudri's opinions will impact the RFC determination.  In other words, while the ALJ must credit Dr. Choudri's opinions on remand as well as Plaintiff's heart/breathing/asthma-related symptom testimony, it us up to the ALJ, not this Court, to determine how that evidence affects the RFC determination and whether Plaintiff is ultimately disabled as a result.

Accordingly, the Court **AFFIRMS IN PART** and **REVERSES IN PART** the decision of the Commissioner and **REMANDS** the case for further proceedings before the agency.  The Commissioner's step three finding is affirmed, while the Commissioner's RFC determination at step four and subsequent finding of no disability at step five are reversed.

**SO ORDERED.**

Dated: July 14, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

15